UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WORLD OF BOXING LLC,
ALEXANDER POVETKIN, and                Civil Action: 16-cv-04870 (ALC) (GWG)
ANDREY RYABINSKIY,

                *Plaintiffs*,

   -- against --

DEONTAY WILDER, DIBELLA
ENTERTAINMENT, INC., and
LOU DIBELLA,

                *Defendants*.
-------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE REQUEST FOR
ADDITIONAL DISCOVERY MADE BY PLAINTIFFS AND IN SUPPORT OF
DEFENDANTS' REQUEST FOR TARGETED ADDITIONAL DISCOVERY**

JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
Tel.: (212) 974-2400
*Attorneys for Defendants Deontay
Wilder, DiBella Entertainment, Inc.,
and Lou DiBella*

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

RELEVANT PRINCIPLES CONCERNING NEW YORK
AND ALABAMA DEFAMATION LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.      GENERAL ELEMENTS OF A DEFAMATION CLAIM . . . . . . . . . . . . . . . . . . . . 1

2.      WHEN A DEFAMATION PLAINTIFF MUST SHOW ACTUAL MALICE . . . . . . . . . 2

        a.      Public Figure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        b.      Limited Purpose Public Figure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3.      SUBSTANTIAL TRUTH AS A DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4.      HYPERBOLE AND INSULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5.      POVETKIN IS A LIBEL PROOF PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II

THE RELEVANCE OF THE DISCOVERY AT ISSUE
BASED UPON THE APPLICABLE LEGAL PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . 9

1.      THE DISCOVERY SOUGHT BY PLAINTIFFS IS NOT
        RELEVANT TO THEIR DEFAMATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . 9

2.      THE DISCOVERY SOUGHT BY DEFENDANTS IS
        RELEVANT TO THEIR DEFENSE AND COULD NOT HAVE
        BEEN PROCURED PRIOR TO THE TRIAL IN THIS MATTER . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

<u>CASES</u>

*161 Ludlow Food, LLC v. L.E.S. Dwellers, Inc.,*
    60 Misc. 3d 1221(A) (Sup. Ct. N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Barnett v. Mobile Cty. Pers. Bd.,*
    536 So. 2d 46 (Sup. Ct. Ala. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Belmont v. Assocs. Nat. Bank (Delaware),*
    219 F. Supp. 2d 340 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Cofield v. Advertiser Co.,*
    486 So. 2d 434 (Sup. Ct. Ala. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cottrell v. NCAA,*
    975 So. 2d 306 (Ala. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*DiBella v. Hopkins,*
    403 F.3d 102 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dillon v. City of New York,*
    261 A.D.2d 34 (1st Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Don King Prods., Inc. v. Douglas,*
    742 F. Supp. 778 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Drill Parts & Serv. Co. v. Joy Mfg. Co.,*
    619 So. 2d 1280 (Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Wyatt, Inc.,*
    169 B.R. 520 (Bankr. D. Conn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jacobus v. Trump,*
    55 Misc. 3d 470 (N.Y. Sup. Ct. 2017),
    *aff'd*, 156 A.D.3d 452 (1st Dep't 2017),
    *leave to appeal denied*, 31 N.Y.3d 903 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*James v. Gannett Co.,*
    40 N.Y.2d 415 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Kelly v. Arrington,*
    624 So. 2d 546 (Sup. Ct. Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

McCaig v. Talladega Pub. Co.,
    544 So. 2d 875 (Ala. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Mead Corp. v. Hicks,*
    448 So. 2d 308 (Sup. Ct. Ala. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Perez v. Violence Intervention Program,*
    116 A.D.3d 601 (1st Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shulman v. Hunderfund,*
    12 N.Y.3d 143 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Singh v. Bd. of Immigration Appeals,*
    243 F. App'x 645 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stepanov v. Dow Jones & Co.,*
    120 A.D.3d 28 (1st Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## INTRODUCTION

Defendants Deontay Wilder ("Wilder"), Lou DiBella ("DiBella"), and DiBella Entertainment, Inc. ("DBE," and collectively with Wilder and DiBella, the "Wilder Parties") respectfully submit this Memorandum of Law (a) in opposition to the request for additional discovery made by Plaintiffs World of Boxing LLC ("WOB"), Alexander Povetkin ("Povetkin"), and Andrey Ryabinskiy ("Ryabinskiy," and collectively with WOB and Povetkin, the "WOB Parties"), (b) in support of the Wilder Parties' request for targeted additional discovery that post-dates the single issue trial in this matter, together with (c) such other and further relief that this Court deems just and proper.

## ARGUMENT

## POINT I

## RELEVANT PRINCIPLES CONCERNING NEW YORK AND ALABAMA DEFAMATION LAW

**1.     GENERAL ELEMENTS OF A DEFAMATION CLAIM**

The general elements of a defamation claim are the same in both New York and Alabama. *See Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999) ("The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."); *McCaig v. Talladega Pub. Co.*, 544 So. 2d 875, 877 (Ala. 1989) ("The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.").

2.   **WHEN A DEFAMATION PLAINTIFF MUST SHOW ACTUAL MALICE**

   a.   **Public Figure**

In both Alabama and New York, a defamation plaintiff who is a public figure must show by

clear and convincing evidence that the published statements were false, or that they were published

with reckless disregard for their truth or falsity. *Shulman v. Hunderfund*, 12 N.Y.3d 143, 147 (2009)

("[T]he rule of *New York Times Co. v. Sullivan*, [84 S.Ct. 710 (1964)] ... bars Shulman 'from

recovering damages for a defamatory falsehood ... unless he proves that the statement was made with

'actual malice'– that is, with knowledge that it was false or with reckless disregard of whether it was

false or not.'   Actual malice must be proved by 'clear and convincing evidence.'") (citations

omitted); *Mead Corp. v. Hicks*, 448 So. 2d 308, 310 (Sup. Ct. Ala. 1983) ("[P]laintiff ... must prove

that the defendant had actual knowledge of the falsity of the defamatory statement or that he made

the statement with reckless disregard for its truth or falsity [as articulated in *New York Times Co. v.

Sullivan*."]); *Barnett v. Mobile Cty. Pers. Bd.*, 536 So. 2d 46, 54 (Sup. Ct. Ala. 1988) ("'Actual

malice' ... or 'Sullivan malice,' means knowledge of falsity or reckless disregard of truth or falsity....

[On appeal the court must] review the record independently to determine whether there was clear

and convincing evidence presented on ... actual malice in a defamation case.") (citations omitted).

In *James v. Gannett Co., Inc.*, the New York Court of Appeals articulated when a plaintiff

can be considered a public figure, and described the category as being "quite broad":

> The category of 'public figures' is of necessity quite broad.  Included, without doubt,
> are many types of public performers such as professional athletes, nightclub and
> concert singers, television and movie actors, and recording artists. (*See Cepeda v.
> Cowles Mags. & Broadcasting*, 9 Cir., 392 F.2d 417, 418-419, *cert. den.* 393 U.S.
> 840, 89 S.Ct. 117, 21 L.Ed.2d 110.)  Although such persons have not necessarily
> taken an active part in debates on public issues, they remain, nevertheless, persons
> in whom the public has continuing interest. Some newspaper readers may have a

keener interest in following public figures whose activities are reported on the sports or gossip pages than in reading the more straightforward reports in the news section of the local newspaper. Newspapers and magazines of general circulation necessarily report on persons upon whom public interest has fastened in order that the public might be induced to purchase their product. Newspapers cater to the public's demand for information and if a newspaper does not provide the sought-after information, its readership may well turn to the competition. If the public wants information on public personalities, the newspaper, to survive, must supply it. Fundamentally, the purchase of the newspaper for whatever reason helps sustain its publication and, thus, serves to assure the commercial survival of the newspaper, a matter of concern to all its readers, the followers of the sports as well as the followers of the news.

The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention.

*James v. Gannett Co.*, 40 N.Y.2d 415, 422 (1976).

As for Alabama law, the Alabama Supreme Court has stated that "[a] public figure is one who either has gained notoriety from his achievements or seeks public attention through vigor and success." *Cottrell v. NCAA*, 975 So. 2d 306, 333 (Ala. 2007) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

It cannot reasonably be disputed that Povetkin is a public figure. As stated in the WOB Parties' own Amended Complaint, Povetkin is a "former Olympic gold medalist [and] has had a successful professional boxing career during which he held the WBA (Regular) Heavyweight Championship from 2011-2014." (Doc. No. 30, at ¶ 20). As a heavyweight champion and former Olympic gold medalist, Povetkin has been in the public eye since well before he challenged Wilder for the WBC heavyweight title. Povetkin has given interviews, and his career is closely followed by the media. (*See* Exhibit 1 to the accompanying November 2, 2018 Declaration of Peter B.Schalk, ("Schalk Dec.") which are print outs of news articles about Povetkin; all exhibits referenced herein are annexed to the Schalk Dec.). Indeed, prior to his bouts, Povetkin participates in multiple media

3

events in order to promote the fight.  Povetkin's fights have been broadcast on international television.  He is undoubtedly a public figure.

Povetkin's promoter, Ryabinskiy, as well as Ryabinskiy's company WOB, are also public figures.  Ryabinskiy is a Russian billionaire and a celebrity in his own right.  In addition, Ryabinskiy and the WOB have "sought and obtained the public's attention by organizing and promoting boxing bouts seen by millions[]."  *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005) (holding that DiBella, a promoter and defendant here, was a public figure for purposes of a defamation claim).  Ryabinskiy regularly appears in the media, and has provided statements to the media regarding the dispute between the Wilder and Povetkin teams in the wake of Povetkin's positive drug test.  (*See* Exhibit 2, which are print-outs of news articles concerning Ryabinskiy).  Indeed, Ryabinskiy is so well known that he was awarded the prestigious WBC Man Of The Year Award, which has previously been awarded to Nelson Mandela, Carlos Slim, and Pope Francis.  (*See id.*, at 1).

Ryabinsky has even gained notoriety as a Russian Oligarch involved in then-candidate Donald J. Trump's ("Trump") attempts to build a Trump Tower property in Moscow, Russia.  As discussed in the detailed BuzzFeed article concerning Trump's former counsel and fixer, Michael Cohen ("Cohen"):

> Four days later, Cohen received a letter from Andrey Ryabinskiy, a Russian mortgage tycoon and boxing promoter. "In furtherance of our previous conversations regarding the development of the Trump Tower Moscow project," Ryabinskiy wrote, "we would like to respectfully invite you to Moscow for a working visit." The meeting would be to tour plots of land for the potential tower, to have "round table discussions," and to coordinate a follow-up visit by Trump himself. Ryabinskiy did not return a message left with his attorney.

(Exhibit 2 hereto at p. 19).  Separate and apart from his boxing exploits, in light of Ryabinsky's alleged role in the aborted Moscow Trump Tower venture, and his status as billionaire Russian Oligarch, the notion that he is not a public figure is untenable.

### b.    Limited Purpose Public Figure

In both Alabama and New York, defamation plaintiffs who are public figures for a limited purpose because they have injected themselves into a public conversation or are the subject of a matter of public concern, must also show actual malice by clear and convincing evidence. *Perez v. Violence Intervention Program*, 116 A.D.3d 601, 601 (1st Dep't 2014) ("Plaintiff was a limited purpose public figure, and therefore, to prevail on her claim of defamation, was required to show by clear and convincing evidence that defendants published the statements at issue with actual malice.") (citations omitted);  *Mead Corp. v. Hicks*, 448 So. 2d 308, 310 (Sup. Ct. Ala. 1983) ("If the plaintiff is a public figure [] he must prove [by clear and convincing evidence] that the defendant had actual knowledge of the falsity of the defamatory statement or that he made the statement with reckless disregard for its truth or falsity [as articulated in *New York Times Co. v. Sullivan*.]....  Most public figures ... are those who are involved in particular public controversies and become public figures for a limited range of issues.") (citations omitted).

Even if Povetkin, Ryabinskiy, and WOB have not achieved the degree of fame and notoriety to be considered public figures for all purposes, they are at least limited public figures for the purposes of this case, which concerns statements made about doping in connection with a WBC world heavyweight championship bout.  As a highly promoted and anticipated world championship fight, the Bout was clearly a matter of public concern.  S*ee Don King Prods., Inc. v. Douglas*, 742 F. Supp. 778, 783 (S.D.N.Y. 1990) ("As to the first step, King's comments related to matters of

public concern. Although boxing matches do not arouse concern among some portions the populace, sports-minded boxing fans are a sufficiently large and devoted segment of the public to warrant finding 'public interest' in the comments of a leading boxing promoter addressing the outcome of the title fight for the world heavyweight championship."). By thrusting themselves onto the world stage by promoting and agreeing to participate in the Bout, the WOB Parties have become public figures with respect to the Bout. *See, e.g.*, *Alcor Life*, 2014 WL 2050661, at *7. Indeed, all of the statements the WOB Parties claim are defamatory were quoted in the American media, showing that the Bout and Povetkin's positive test for Meldonium in advance of the Bout were clearly issues of public concern. (Doc No. 30, at ¶¶ 77-79).

Doping is also a matter of public concern. Plaintiffs placed themselves square in the midst of the public discourse on doping by engaging in a public debate over Povetkin's positive test for Meldonium. Dispositive here, Ryabinskiy argued on Twitter with ESPN reporter Dan Rafael ("Rafael") about his coverage of Povetkin's meldonium doping violation, with Ryabinskiy complaining that Rafael's reporting was "not true" and instead "opinion" and that Rafael supposedly never asked Ryabinskiy for comment, which Rafael disputed. (Exhibit 3 is a true and accurate copy of this May 16, 2016 Twitter exchange). Indeed, Ryabinskiy sent Maxwell Baer a translation over Twitter of a separate interview he gave where he denied that Povetkin was a cheater, and instead claimed that "[i]f Povetkin really took Meldonium, its level in his blood would have been much higher" and that "we know that [Povetkin] didn't take Meldonium since January, when it was prohibited." (Exhibit 4 is a true and accurate copy of this May 20, 2016 Twitter exchange with the requested translation). WOB also wrote the WBC a contemporaneous letter imploring that it not cancel the Wilder bout because Povetkin purportedly ingested meldonium back in 2015 when it was

not banned, as evidenced by the low concentrations found in his system.  (Exhibit 5 is a true and accurate copy of this communication).

### 3.     SUBSTANTIAL TRUTH AS A DEFENSE

In both Alabama and New York, the substantial truth of allegedly defamatory statements is a defense to a defamation claim. *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014) ("Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense."); *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993) ("We infer from the trial court's order that it also concluded that the other articles were substantially correct.  Because we conclude that a jury, when reading these  articles in their entirety,  could  not  find  that  they  conveyed  a  false  meaning,  we  affirm  the  summary judgment.").

As discussed *infra* in POINT II(1), based on the jury verdict in this case, no reasonable trier of fact could conclude by clear and convincing evidence that Defendants' allegedly defamatory statements were not substantially true.

### 4.     HYPERBOLE AND INSULT

In both Alabama and New York, statements which are hyperbolic or insulting are not considered defamatory. *Jacobus v. Trump*, 55 Misc. 3d 470, 475 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (1st Dep't  2017), *leave to appeal denied*, 31 N.Y.3d 903 (2018) ("[D]efamatory statements advanced during the course of a heated public debate, during which an audience would reasonably anticipate the use of 'epithets, fiery rhetoric or hyperbole,' are not actionable."); *Kelly v. Arrington*, 624 So. 2d 546, 550 (Sup. Ct. Ala. 1993) ("The Court further held that ''Imaginative

7

expression' and 'the rhetorical hyperbole' traditionally used in public debate are protected.'")
(citations omitted).

A number of the allegedly defamatory statements attributed to Defendants plainly fall within this category. For example, no reasonable trier of fact could have taken Wilder literally with regard to the statement that Povetkin was "coming to fight me with a knife in his hands." (*See* Doc. No. 30 at ¶78 (b) and (c), where Plaintiffs contend that this statement was defamatory).

## 5.    POVETKIN IS A LIBEL PROOF PLAINTIFF

In both Alabama and New York, a defamation plaintiff can be "libel proof," meaning that he or she can show no significant damage to his or her reputation. Povetkin is a twice caught doper. Moreover, the WBC's November 17, 2017 decision hardly removes the sting of the jury verdict. This is especially so, in light of Povetkin's unexplained positive test for the banned substance ostarine, which followed immediately after his positive test for meldonium. Moreover, despite the WBC's professed uncertainty as to whether Povetkin ingested meldonium at a time when it was banned – regardless of the jury's verdict in this case, which the WBC previously pledged to honor – the WBC still fined Povetkin the astronomical sum of $250,0000 in connection with its supposedly exculpatory decision. Based on these facts and circumstances, under Alabama and New York law, Povetkin should be considered libel-proof as to statements about his use of performance-enhancing substances. *161 Ludlow Food, LLC v. L.E.S. Dwellers, Inc.*, 60 Misc. 3d 1221(A) (Sup. Ct. N.Y. 2018) ("[T]he 'libel-proof plaintiff doctrine' applies here since plaintiff operated without a Certificate of Occupancy or Public Assembly Certificate for two years, [and] '[t]here are no bad reputational consequences that could flow from a false statement that in August 2015, [plaintiff] lacked these permits.'...   Indeed, plaintiff indisputably operated without such licenses for a

8

significant period of time, so that at the time the defendants allegedly made false statements to that effect, its reputation could not be significantly harmed given its history of noncompliance."); *Cofield v. Advertiser Co.*, 486 So. 2d 434, 435 (Sup. Ct. Ala. 1986) (Affirming that "this action is due to be dismissed because this plaintiff, at least as to the publication which forms the basis of the complaint is 'libel proof' and ... a failure to dismiss this complaint would offend the First and Fourteenth Amendments of the United States Constitution. As a matter of law, this plaintiff can show no significant damage to his reputation[.]").

## POINT II

### THE RELEVANCE OF THE DISCOVERY AT ISSUE BASED UPON THE APPLICABLE LEGAL PRINCIPLES

1. ### THE DISCOVERY SOUGHT BY PLAINTIFFS IS NOT RELEVANT TO THEIR DEFAMATION CLAIM

As the Court will recall, prior to the trial, the WOB Parties objected to the Wilder Parties obtaining discovery relating to Povetkin's negative tests for meldonium, and then moved to preclude Dr. Anthony Butch from providing expert opinions and testimony based on the new data. After losing the trial, Plaintiffs now take a different tack. As set forth in the June 1, 2018 Joint Status Report, Plaintiffs are demanding a host of documents concerning Povetkin's five (5) urine samples that UCLA tested prior to his anticipated bout with Wilder. (*See* Doc. No. 127 at p. 2, n. 1). Specifically, Plaintiffs want all draft reports, related communications, machine-readable data, notes, as well as email communications. They also intend to take multiple non-party depositions. (*See id.*) Plaintiffs knew the identity of the individuals whose communications they now demand, and whose depositions they intend to take, **before** the trial, but they opted to move to preclude instead of seeking to compel additional production. They should be made to live with the consequences of that

choice.  We have already briefed the issue of fault here and will not repeat those arguments now, but instead incorporate them herein by reference.  (*See, e.g.,* Exhibit 6, Defendants' October 18, 2018 letter with exhibits, which is respectfully incorporated herein by reference).  But regardless, the discovery is not relevant to the remaining libel claim.

Plaintiffs' assert libel on two core grounds: that Defendants falsely accused (a) Povetkin of ingesting meldonium when it was banned to gain an unfair advantage thereby placing Wilder's health and safety at risk, and (b) that Plaintiffs lied about Povetkin's doping.  (*See* Doc. No. 30 at p. 29, ¶ 105).

None of the internal UCLA data or communications could have any impact on the question of whether Defendants knew that these statements were false or were reckless in their disregard for their falsity.  This is unquestionably so, because DiBella and Wilder did not have any personal knowledge about the inner workings of UCLA's lab when they published their allegedly defamatory statements.  To the contrary – **the UCLA tests were blind** – and so the witnesses who Plaintiffs want to force to produce communications and then depose did not even know whose urine they were testing during the relevant time periods.  In fact, information about the negative tests only became available in December 2016 after this Court ordered the release of the vial numbers over Plaintiffs' objection – or some seven months after Defendants allegedly defamed Plaintiffs back in May 2016.  As such, the discovery in question has no relevance whatsoever to Defendants' state of mind at the time when they published the allegedly defamatory statements.

Because the discovery that Plaintiffs seek is palpably irrelevant to the question of malice, its only conceivable relevance would go to the issue of substantial truth – *i.e.*, did Povetkin ingest meldonium at a time when it was banned.  But the jury has already spoken on that issue, and Hon.

10

Andrew L. Carter, Jr. overruled Plaintiffs' attempt to re-open discovery and pursue these same materials when the Court denied their motion for judgment as a matter of law or a new trial.  The law of the case doctrine bars this Court from changing the District Court's prior ruling on the matter. "To the extent that we have already ruled on the issue ... the law of the case doctrine requires that we follow our previous decision to deny Singh's petition." *Singh v. Bd. of Immigration Appeals*, 243 F. App'x 645, 646-47 (2d Cir. 2007) (citation omitted).[1]

Even if Plaintiffs' request did not run afoul of the law of the case doctrine, they have not met their burden to obtain post-trial discovery.

> In the context of post-trial discovery, "it is well within [the trial court's] discretion to require the moving party to make a showing in support of its allegations before requiring the prevailing party to submit a second time to extensive discovery to protect his judgment." *H.K. Porter Co.*, 536 F.2d at 1119.  While courts are bound to enforce a party's rights to the extensive pre-trial discovery provided for by federal discovery rules, substantially different considerations exist in granting post-trial discovery.  In the *H.K. Porter Co.* decision affirming the district court's denial of post-judgment discovery in connection with a Rule 60(b) motion for relief from judgment, the Sixth Circuit explained that
>
>> a request for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments.
>
> 536 F.2d at 1118[.]

*In re Wyatt, Inc.*, 169 B.R. 520, 523 (Bankr. D. Conn. 1994).

> Belmont also seeks to reopen discovery in an attempt to uncover additional potential non-disclosure violations of TILA.  However, under Rule 59(e) of the FRCP and Local Rule 6.3, motions for reconsideration are denied unless the moving party can "point to controlling decisions or [factual] data that the court overlooked." *Shrader*

---

[1]     The requested discovery is further irrelevant because Povetkin is libel proof and many of the statements in question are mere hyperbole.

11

*v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). These potential other violations of TILA were not overlooked; they were simply not pursued previously by Belmont. Just because Belmont is correct that the August 18, 2000 Memorandum and Order misinterpreted the statute does not mean that he is entitled to further discovery to take full advantage of this clarification where this issue was first raised in Belmont's second motion for reconsideration.

Similarly, Rule 60(b) is "extraordinary judicial relief" that may be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986). Under Rule 60(b)(2) relief may be granted based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." **Here, however, Belmont has not offered any newly discovered evidence—he only seeks to use discovery in hopes of finding further evidence. And even if he did find new evidence, it would not be of the type that could not have been discovered previously by due diligence**. Nor has Belmont alleged any "mistake, inadvertence, surprise, or excusable neglect" as required under Rule 60(b)(1). Accordingly, Belmont's motion to reopen discovery is denied.

*Belmont v. Assocs. Nat. Bank (Delaware)*, 219 F. Supp. 2d 340, 346 (E.D.N.Y. 2002) (emphasis supplied).

## 2. THE DISCOVERY SOUGHT BY DEFENDANTS IS RELEVANT TO THEIR DEFENSE AND COULD NOT HAVE BEEN PROCURED PRIOR TO THE TRIAL IN THIS MATTER

In the context of their intended motion for summary judgment, Defendants will contend that this Court should reject any attempt by Plaintiffs to collaterally attack the jury verdict and judgment. However, we have no guarantee that this Court will adopt our position, and it is crystal clear at this point that Plaintiffs intend to use the WBC's contrary conclusion from its November 17, 2017 decision to undermine the jury's verdict on the question of truth. (Exhibit 7 is a true and accurate copy of the WBC's November 7, 2017 decision). Under the circumstances, Defendants are entitled to obtain discovery to rebut Plaintiffs' argument that the jury verdict should not be credited by this Court because the WBC could not confirm that Povetkin ingested meldonium after it was banned.

12

Here, Plaintiffs procured the WBC's helpful decision pursuant to an *ex parte* appeal that did not follow any of the procedures or substantive law applicable in this Court or the Second Circuit. In short, we do not know what Plaintiffs submitted to the WBC, despite our request that they produce it, which was refused.  Moreover, in the November 17, 2017 decision that resulted from Plaintiffs' *ex parte* appeal, the WBC brazenly acknowledged that Povetkin was going to pay "a $250,000 USD fine to the WBC immediately after the publication of this Ruling." (Exhibit 7 at p. 4, Section III(3)). That payment, which is an extraordinarily high fine for a boxing violation, is suspect on its face as a *quid pro quo* for the WBC's issuance of a favorable decision.

Based on the foregoing, Defendants seek documents and communications about (a) Plaintiffs' appeal to the WBC which resulted in the November 7, 2017 decision, (b) the WBC's November 7, 2017 decision itself, and (c) the $250,000 payment it received.  Those materials could serve to refute the validity of the WBC's contention that it could not verify the jury's verdict – despite the WBC's prior commitment to abide by the verdict before Plaintiffs agreed to pay it $250,000.  With particular regard to Plaintiffs' appeal submission to the WBC, Plaintiffs may have made the same arguments to the WBC that they submitted to Judge Carter, only to have them rejected through the Court's denial of their post-trial motion.

Lastly, the targeted discovery requested by Defendants did not even exist until after the discovery period, and is thus legitimately newly discovered material.  In contrast, the open-ended discovery sought by Plaintiffs was available during the discovery period, but Plaintiffs opted to seek to preclude and not to compel.  Moreover, Judge Carter ruled that discovery should not be re-opened, and his ruling on this issue should not be disturbed.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, as well as those stated in the accompanying submissions, and based upon all prior proceedings heretofore had herein, Defendants request that the Court deny Plaintiffs request for additional discovery and grant Plaintiffs' request for limited discovery, together with such other and further relief as this Court deems just and proper.

Dated: November 2, 2018
        New York, New York

Respectfully submitted,

JUDD BURSTEIN,P.C.

By: _____
Peter B. Schalk